IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MICHAEL PERRY, #3165614, #447342     *

Plaintiff     *

v.     *     Civil Action No. PWG-16-705

WARDEN[1]     *

Defendant     *

                    ***

## MEMORANDUM OPINION

Michael Perry claims that he was attacked and injured by his fellow inmates on August 30, 2015, at the Jail Industries ("JI") Building, a facility under the purview of the Baltimore City Detention Center ("BCDC")[2] and, although he was "clinging to life," he was not rushed to the hospital for treatment. ECF No. 1. Defendant filed a Motion to Dismiss or, in the Alternative for Summary Judgment, ECF No. 17, and Perry has filed an opposition. ECF No. 20.

## BACKGROUND

Perry filed this Complaint *pro se* on March 9, 2016, seeking monetary relief against unidentified defendants after he was attacked in prison.[3] I directed him on March 24, 2016, to clarify the Complaint to include whether he was administered medical care, whether he had reason to believe he was in danger from his attackers prior to the assault, and whether he had

---

[1] Gwendolyn Oliver was Warden of BCDC at the time of the attack. The Clerk will amend the docket accordingly.

[2] Perry's most recently provided address is the Maryland Correctional Training Center in Roxbury, Maryland. The Maryland Inmate Locator indicates he is presently housed at the Brockbridge Correctional Facility in Jessup, Maryland.

[3] Perry wrote on the caption of the Complaint in regard to the names of the Defendants: "The State wont [sic] give them to me but I pointed them out to a detective for the State." Compl. 1. Perry states in the Complaint that "the director was suppose[d] to help" him with filing a grievance, but he provides no additional information. *Id.* at 2.

made these concerns known to correctional staff. ECF No. 4.

Perry filed an Amended Complaint on April 7, 2016, describing the August 30, 2015 assault and identifying the Warden of "401 E. Eager Street, Baltimore, Maryland" (the address where BCDC is located) as the sole Defendant. ECF No. 5. According to Perry, "this has been happening since 2014," and he was placed on protective custody and transferred from the Central Booking and Intake Center because he was "being targeted by BGF [Black Guerilla Family] Gang Members."[4] Am. Compl. 3. He alleges that "there [was] pap[]er work for [him] not to be house with BGF members." *Id.*

On April 13, 2016, Perry supplemented the Amended Complaint, alleging that he was being targeted by the BGF for making a deal on May 20, 2014[5] to testify against BGF gang members in an attempted murder case. Supp. 1, ECF No. 7. On the day of trial, two gang members pleaded guilty; one was sentenced to a term of fifteen years incarceration, and the other to a five-year term. *Id.* Perry alleges that he was incarcerated for eleven months for that case and, because he agreed to testify against BGF members, he was assaulted twice by BGF members during that time and then placed on protective custody. *Id.* He asserts that after he was released, BGF members tried to kill him. *Id.* Perry claims that he was confined at the Central Booking and Intake Center on August 7, 2015, and moved to JI on August 30, 2015, after gang intelligence staff learned that he was a BGF target. Compl. 3–4; Supp. 1 (stating that he was confined at BCDC prior to JI).

Perry claims that he was attacked within thirty minutes of his transfer to JI. Compl. 3;

---

[4] The Black Guerilla Family is a prison and street gang. *See e.g.* https://www.justice.gov/usao-md.

[5] This was around the period relevant to indictments issued in *United States v. White*, Criminal Case No. ELH-13-151 (D. Md.). In that case, prison guards and BGF inmates at BCDC were charged various counts of racketeering, conspiracy to distribute drugs, and money laundering.

2

Supp. 1. He tried to fight off the assailant, but other inmates were gang members joined the attack on him. Compl. 3; Supp. 1. The assailants stabbed Perry on his neck, back, face, and head, and broke his nose and tooth. Compl. 4; Supp. 1-2. Perry claims that a nurse told the corrections officers that he needed to be sent to the hospital, but they did not call 911, sending him instead to the hospital in a Department of Correction ("DOC") van. Supp. 2.

After Perry left the hospital, he was sent to the Maryland Transition Center ("MTC") where "a detective that was working on [his] case informed [him that he was] targe[]ted in the booking." *Id.* According to Perry, the BGF gang "ran" MTC and told him that, if he did not leave, he would be assaulted again. *Id.* From there, Perry was moved to the Maryland Reception, Diagnostic & Classification Center ("MRDCC"), where he was placed on the same unit as one of his attackers. *Id.* Perry alleges that he identified two of his attackers in a photographic lineup to an investigator who "was suppose[d] to be pressing charges against the 2," but Perry has heard nothing since. *Id.*; *see also* Pl.'s Opp'n. Perry has submitted a Department of Public Safety and Correctional Services Memorandum from September 18, 2015, in which the Commissioner asked the Director of Howard County Detention Center to house Perry "for the purpose of safekeeping." ECF No. 21-1.

## DISCUSSION

Defendant moves for dismissal or for summary judgment for failure to exhaust administrative remedies or, alternatively, due to lack of personal involvement or deliberate indifference by the Warden. In his opposition, Perry asserts that he asked "the director" to help him fill out a complaint and the director was "suppose[d]" to assist him but "never got around to it"; he also states that the detective present at the photo array did not contact him again. Pl.'s Opp'n 1. Perry insists that he does not have access to the information he needs under these

3

circumstances. *Id.* at 2. Perry, who was transferred to the Howard County Detention Center in September of 2015 shortly after the stabbing, seems to allege, albeit inartfully, that his transfer impeded his access to information to identify defendants and to pursue his administrative remedies. *See id.* at 1 ("Now there is no paper work on fowl [sic] for [his attack]," even though there "should be paper work at Howard County, the pen and MRDCC [from] the times the detective came and saw [him] to show [him] line ups. . . . I did not know or have all the information that y[·]all said I had to have, fill out or go through when I find the civil act[ion] forms. . . . The State would not give me access to all the paper work doing these events when they took place. I can sign my records from the jail hospital over to y[·]all so y[·]all can have access to the files from 2014."). Further, it is unclear whether Perry was hospitalized and for how long, which also may have hindered his ability to obtain this information. In a later filing, Perry states that he "tr[i]ed to write a Federal Public Defender and a[n] Investigator to help [him] out with . . . this case," but neither has responded. ECF No. 21.

Generally, summary judgment is inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 44–49 (4th Cir. 2012); *see Putney v. Likin*, 656 Fed. App'x 632, 639–40 (4th Cir. 2016) (per curiam); *McCray v. Md. Dep't of Transp.*, 741 F.3d 480, 483 (4th Cir. 2015). To raise adequately the issue that discovery is needed, a non-movant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery. Fed. R. Civ. P. 56(d); *see Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244-45 (4th Cir. 2002) (discussing affidavit requirement of former Rule 56(f)). Although Perry has not submitted an affidavit, I am mindful that he is self-represented and view his allegations as stating that essential

facts are unavailable to him to file a meaningful opposition, analogous to a motion pursuant to Rule 56(d). Failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary" and the "nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit.'" *Harrods*, 302 F.3d at 244-45 (internal citations omitted); *see also Putney*, 656 Fed. App'x at 638; *Nader v. Blair*, 549 F.3d 953, 961 (4th Cir. 2008).

Moreover, district courts have broad discretion to request an attorney to represent indigent civil litigants. 28 U.S.C. § 1915(d). Courts may exercise this discretion "in exceptional circumstances." *Cook v. Bounds*, 518 F.2d 779, 780 (4th Cir. 1975). "The question of whether such circumstances exist in a particular case hinges on the characteristics of the claim and the litigant. When a colorable claim exists but the litigant has no capacity to present it, counsel should be appointed." *Ravenell v. Corizon Med. Servs.*, No. ELH-13-203, 2014 WL 470062, at *1 (D. Md. Feb. 5, 2014) (citing *Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984)).

Perry claims that he prison staff were aware that a gang had targeted him and previously assaulted him, yet he was violently attacked immediately upon his transfer to a new facility, and then not rushed to the hospital despite the severity of his injuries. But, he has not explained why he did not exhaust his administrative remedies, beyond stating that a "director was suppose[d] to help" him. Nor has he clearly identified the correctional officers who failed to protect him or secure prompt medical care. Additionally, he has indicated that he attempted, without success, to obtain the information and legal assistance he needed to pursue this case. Thus, Plaintiff has not demonstrated the wherewithal to articulate the legal and factual basis of his claims himself or to secure meaningful assistance in doing so. These circumstances warrant the appointment of an

attorney to represent plaintiff under § 1915(e)(1). Therefore, I will appoint counsel for Perry to conduct discovery as to the names of the correctional staff, including intelligence staff, who were involved in decisions relevant to Perry's safety and transfer to JI and whether the administrative review process was available to Perry, and I will deny Defendant's motion without prejudice to renewal at the close of this limited discovery.

## CONCLUSION

Accordingly, Defendant's Motion (ECF No. 17) will be DENIED WITHOUT PREJUDICE subject to renewal after appointment of counsel and completion of limited discovery as discussed above. A separate Order follows.

6/28/17
Date

Paul W. Grimm
United States District Judge